INTERSTATE PETROLEUM DISTRIBUTORS, LTD., a Limited Liability Company, Plaintiff-Appellant,

v.

F & B INVESTMENTS, INC., d/b/a Fast Stop, Robert Betz, M.D. and Betty Betz, Gerald Davis Fagan and Linda Fagan, Defendants-Respondents.

INTERSTATE PETROLEUM DISTRIBUTORS, LTD., a Limited Liability Company, Plaintiff-Respondent,

v.

F & B INVESTMENTS, INC., d/b/a Fast Stop, and Gerald Davis Fagan, Defendants-Appellants,

Robert Betz, M.D., Betty Betz, and Linda Fagan, Defendants.

Nos. 16992, 17011.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 10, 1991.

Motion for Rehearing or to Transfer Denied Oct. 2, 1991.

Evelyn A. Gwin, Springfield, Donald J. Adams, Harrison, Ark., for Interstate Petroleum Distributors, Ltd.

M. Corinne Corley, Arens & Alexander, Fayetteville, Ark., for F & B Investments, Robert Betz, M.D. and Betty Betz, Gerald Davis Fagan and Linda Fagan.

FLANIGAN, Chief Judge.

Plaintiff Interstate Petroleum Distributors, Ltd., a "limited liability company" organized under the laws of Wyoming, ("Interstate"), brought this action against defendants F & B Investments, Inc., ("F & B"), Robert Betz, M.D., Betty Betz, Gerald Fagan and Linda Fagan.

Count I of the petition, directed against F & B, sought $44,562.67, later reduced to $43,857.34, which was the allegedly unpaid price of gasoline and diesel fuel furnished by Interstate to F & B from January 10, 1987, until January 20, 1987, at F & B's Fast Stop service station near Neosho. F & B's answer to Count I was a general denial.

Count II, directed against Gerald Fagan, sought $906.10, which was the allegedly unpaid price of petroleum products sold by Interstate to Gerald Fagan on December 31, 1986. Gerald Fagan's answer to Count II was a general denial.

Count III, directed against the four individual defendants, was based upon a guaranty executed by the Betzes and a separate guaranty executed by the Fagans, whereby the guarantors assumed responsibility for the debts of F & B, including the debt alleged in Count I. The individual defendants filed a general denial to Count III and then pleaded the following: "Further answering, Defendants Robert Betz, Betty Betz, Gerald Davis Fagan and Linda Fagan state that the personal guaranty on their part, if any, was subsequently cancelled as a result of a satisfaction and accord reached between the parties."

The case was tried to a jury. On the morning of the trial, defendant F & B received permission to amend its answer to Count I by pleading a "set-off." The set-off, as submitted to the jury, was based on the claim that Interstate furnished "motor fuel" to F & B "during a period between the latter part of 1984 through January 20, 1987," and Interstate did not deliver to F & B the amount of motor fuel as set forth in its invoices during such time period and Interstate charged F & B $44,217 for motor fuel not delivered.

Both sides filed motions for directed verdicts, the motions were denied, and the issues were submitted to the jury. The jury found in favor of Interstate on Count I and assessed the damages at $43,857.34. The jury also found in favor of Interstate on F & B's claim of set-off. The jury found in favor of Interstate on Count II and assessed the damages at $907.52.[1] On Count III the jury found in favor of the Betzes and the Fagans. Judgment was entered on the verdicts.

Post-trial motions filed by both sides were denied. Interstate appealed. Defendants F & B and Gerald Fagan joined in a separate appeal. The appeals were consolidated and will be treated separately in this opinion.

F & B claims that the trial court erred: (1) in failing to grant F & B judgment notwithstanding the verdict on Count I because the evidence was insufficient to support that verdict, (2) in failing to grant F & B judgment notwithstanding the verdict on the issue of set-off because there was no substantial evidence to support the verdict in favor of Interstate on F & B's claim for set-off, and (3) in not directing a verdict in favor of F & B for a set-off for the value of 4,000 gallons of gas because the uncontroverted evidence established F & B's entitlement to that set-off.

Defendant Gerald Fagan claims that the evidence is insufficient to support the verdict in favor of Interstate on Count II.

Interstate claims that the trial court erred in permitting the individual defen-

---

1. Defendant Gerald Fagan makes no complaint concerning the discrepancy of $1.42 between the amount sued for and the amount awarded.

dants to testify, over Interstate's objection, to matters which conflicted with the written guaranties, including testimony that the liability of each set of spouses was limited to 50 percent of any indebtedness of F & B. Interstate also claims that it is entitled to relief on Count III as a matter of law.

In 1984 Interstate acquired the assets and liabilities of Ozark County Gas Company, which was a supplier of gasoline and diesel fuel to F & B's service station in Neosho. Defendants Robert Betz and Betty Betz, husband and wife, owned 50 percent of F & B, and defendants Gerald Fagan and Linda Fagan, husband and wife, owned the other 50 percent. Interstate continued to supply F & B with the petroleum products through January 20, 1987. The deliveries which were not paid for by F & B, and which were represented by the invoices introduced into evidence by Interstate, took place between January 10 and January 20. The balance due on the unpaid account, according to Interstate's evidence, was $43,857.34, which was the amount the jury awarded to Interstate on Count I.

Defendant Gerald Fagan testified that there was a discrepancy between the number of gallons of fuel billed by Interstate and the number of gallons actually received by F & B. Fagan and Betz attempted to determine the amount of the claimed shortage. Fagan testified that he and Betz determined that the shortage was 60,000 gallons, that is F & B had paid for but failed to receive that amount. Fagan calculated that overpayment at $44,217. This claim was based, at least in part, on so-called "stick readings" made by the delivery truck driver at the time the fuel was delivered to F & B's tank.

Fagan testified that after he "went through these invoices" he talked to his attorney and that because of the "Interstate shortage I had uncovered, we began to pull loads of gas in and diesel fuel, six or seven loads, because I didn't want to be doing this out in Denver where [Interstate's] office is, trying to get my money back."

Robert Betz testified that for 1986 the shortage amounted to 30,000 gallons, but also testified he would "accept" Fagan's figure of 59,236 gallons.

Brian Snelson, a defense witness, testified that the shortage for 1986 was 30,169 gallons.

Leonard Cardwell, a witness for Interstate, testified that he examined the records of F & B to see if there was a variance between the invoices and the amount delivered to F & B. He used F & B records, which included readings from totalizers which are measuring devices on the fuel dispensers at F & B's station. Readings from meters at the pipeline terminal at which the shipments originated were introduced into evidence. For 1986 Cardwell found an overage of 773 gallons of regular gasoline, and shortages of 3,865 gallons of unleaded gasoline and 1,213 gallons of diesel fuel.

Cardwell also testified, without objection, that based upon his experience in the oil industry the variances he found at the Fast Stop Neosho store in 1986 were acceptable and that for other oil and gas customers of his CPA firm, he would "find a similar variance over a 12–month period as he found in this case." There was also evidence that the shortage of 4,305 gallons found by Cardwell arose in total sales of 1,816,461 gallons.

F & B's evidence concerning the shortages was based on stick readings. Interstate introduced evidence that stick readings were inaccurate and unreliable.

### APPEAL OF DEFENDANTS F & B AND GERALD FAGAN

F & B contends that the evidence was insufficient to support the verdict in favor of Interstate on Count I. F & B claims that there was "a lack of substantial evidence to support the verdict in favor of Interstate on F & B's claim of set-off, and that the trial court erred in not entering a judgment notwithstanding the verdict which would award F & B the $44,000 set-off." F & B also contends that under the evidence it was entitled to a set-off of

$44,000, based on Fagan's testimony concerning the shortage of 60,000 gallons. These contentions will be considered together.

■ In determining whether Interstate made a submissible case, this court must review the evidence in the light most favorable to Interstate and give it the benefit of all inferences which may reasonably be drawn and which support the petition. *Smith v. Allied Supermarkets, Inc.,* 524 S.W.2d 848, 849[1] (Mo. banc 1975); *Walters v. Maloney,* 758 S.W.2d 489, 495 (Mo. App.1988). Whether a jury verdict is against the weight of the evidence is a question for the trial court alone. *Wilcox v. Coons,* 362 Mo. 381, 241 S.W.2d 907, 917[25] (1951); *Mayfield v. Metropolitan Life Insurance,* 585 S.W.2d 163, 164[2] (Mo.App.1979). Appellate courts do not weigh the evidence in a case tried before a jury. *State ex rel. State Highway Commission v. Twin Lakes Golf Club, Inc.,* 470 S.W.2d 313, 315[3] (Mo.1971); *Walters v. Maloney, supra,* at 497. See also *Neavill v. Klemp,* 427 S.W.2d 446, 449[13] (Mo. 1968).

■ F & B asserts the testimony given by Fagan, whom it calls its "main witness," was credible. Fagan's calculation of shortages was based on "stick readings." F & B argues that the testimony of Interstate's witness Hunt, to the effect that stick readings are inaccurate, was not credible. F & B states: "The jury ignored evidence from both parties that the amount of gasoline in F & B's tanks was less than F & B was to receive from Interstate. Even taking into consideration that F & B's calculations of the shortage were higher than Interstate's, it cannot be said that the jury's failure to take the shortage into account in some fashion was less than arbitrary."

F & B's arguments address merely the weight of the evidence and not its sufficiency. Fagan admitted that F & B received the deliveries which were the subject of the unpaid invoices. The petition sought payment for deliveries made only over a 10–day period, and no shortage was shown for those deliveries. Interstate introduced into evidence admissions of F & B that Inter-state furnished gasoline and diesel fuel to F & B from January 10, 1987, through January 20, 1987, that F & B agreed to pay for those petroleum products and services, and that F & B refused and still refuses to pay any part of the $44,562.67 debt.

■ F & B contends that as a matter of law it was entitled to a set-off for the value of 4,000 gallons of gasoline because Interstate's witness Cardwell testified that in 1986 there was a shortage of 4,305 gallons. F & B makes no attempt to translate that figure into dollars, although some of the shortage was in diesel fuel, some of it was in unleaded gasoline, and there was an overage in regular gasoline. F & B argues that the jury should have been instructed to award a set-off in favor of F & B for the reasonable value of the "4,000 gallons." Interstate responds that there was evidence that the level of variance (4,000 gallons shortage in 1.8 million gallons delivered) was acceptable in the industry and that there would always be a shortage over the course of a year.

At no time during the trial did F & B request that the court direct a verdict with respect to the 4,000 gallon shortage. F & B did not counter Interstate's evidence that such a variance was to be expected and was acceptable in the business. Instead, F & B obtained an instruction authorizing the jury to award it a set-off of $44,217 based on the 60,000 gallon shortage which Fagan had claimed.

This court holds that the evidence is sufficient to support the verdict on Count I and that the trial court properly denied F & B's motion for judgment notwithstanding the verdict with regard to F & B's claim for set-off of $44,217. This court also holds that the trial court did not err in failing to direct a verdict in favor of F & B for the value of 4,000 gallons of gasoline, relief not requested by F & B in the trial court, because there was evidence that the 4,000 gallons was within variance levels accepted in the business. F & B's appeal has no merit.

■ Defendant Gerald Fagan claims that the evidence is insufficient to support

the verdict in favor of Interstate on Count II. F & B's brief concedes that Interstate's witness Hunt testified that Interstate delivered gasoline to "Spot Not," which was owned by Fagan, that the bill for that gasoline was $907.52, that demand had been made upon Fagan for payment and that it had not been paid. Interstate's Exhibit 55, received into evidence without objection, reflects the sale and delivery of the challenged shipment to Spot Not. Fagan did not mention Exhibit 55, nor did he dispute any portion of Hunt's testimony concerning the sale pleaded in Count II.

Hunt testified, on cross-examination by F & B's counsel, that when Fagan did not order a full load for F & B the rest of the load would go to Spot Not. The following testimony was also elicited on cross-examination:

Q. You're asking for money on a trip, 900 some dollars, to [Gerald Fagan], is that right?

A. That's Spot Not.

Q. Can you show me where that one is in there?

A. Here's where it's delivered on that load.

Q. Now, we're looking at the—let's identify it.

A. This is delivery ticket No. 63.

Q. This tag here?

A. Plaintiff's 55.

Q. All right.

A. And then this is the invoice for it right here.

Q. All right, now, on this particular load, well, this was New Year's Eve, is that right, 12/31/86?

A. Yeah, it is.

This court holds that the evidence is sufficient to support the verdict on Count II. Defendant Gerald Fagan's appeal has no merit.

## APPEAL OF INTERSTATE

Interstate contends that the trial court erred in receiving into evidence testimony of the individual defendants which was contrary to the contents of the two written guaranties, Interstate's Exhibits 6 and 7.[2] This contention relates to Count III of the petition which sought recovery against defendants Robert Betz and Betty Betz on their written guaranty and against defendants Gerald Fagan and Linda Fagan on their separate but similarly worded written guaranty.[3] The evidence complained of consists of testimony from each of the four defendants to the general effect that the liability of the respective two guarantors (Robert Betz and Betty Betz on Exhibit 6, and Gerald Fagan and Linda Fagan on Exhibit 7) was limited to 50 percent of the debt of F & B. The first page of each guaranty obligated each guarantor to pay all of F & B's obligation to the guarantee. At the trial each of the four defendants admitted signing the second page of the respective two-page guaranty.

Defendants argue that the challenged evidence concerning the purported 50 percent limitation of liability under each guaranty "was probative on the issue of whether the proffered exhibits [Exhibit 6 and Exhibit 7] was in fact that guaranty."

Exhibit 6 and Exhibit 7 were received into evidence during the presentation of Interstate's case. The first defense witness was defendant Linda Fagan. Defense counsel showed her Exhibit 7, the Fagan guaranty, and asked her if she had any

---

2. Interstate also asserts that the trial court erred in receiving evidence concerning defendants' Exhibit B. It is unnecessary to determine the admissibility of Exhibit B, a matter on which the trial court did not rule, because of defendants' failure to offer it into evidence. See *Songer v. Brittain,* 272 S.W.2d 16, 22[15] (Mo. App.1954). Since Interstate's first point is meritorious, it is unnecessary to consider whether evidence concerning the unoffered exhibit was improperly and prejudicially received.

3. Each of the two guaranties contained a provision that it extended "to the benefit of Ozark County Gas Company and its successors and assigns." Neither in the trial court nor in this court has any defendant claimed that Interstate lacked standing to make claim under the guaranties.

reason to believe "that that was the document that existed at the time that your signature got put on the second page." Interstate's counsel objected to the question on the ground that it was an attempt to change the wording of the agreement by oral testimony. The objection was overruled and Linda testified, "I have reason to question it, because we were in the corporation at 50 percent and at that time everything we signed was on a 50 percent basis and not on 100 percent." She also testified that she did not "really have any independent recall" of that particular document.

Gerald Fagan testified that the first page of Exhibit 7 was not the page that was with the document when he signed the second page. He said he knew that "because there is nothing in here about a 50 percent guaranty."

Betty Betz testified that she did not remember "one way or the other" whether the first page of Exhibit 6 was the first page of the document which she signed. Robert Betz testified that he "had reason to doubt" that the first page of Exhibit 6 was on the document when he signed the second page because "I would not have signed a document that increased my liability greater than my percentage of ownership, 50 percent."

Interstate's point requires a review of the record in light of Rule 55[4] and the parol evidence rule. For the reasons which follow, this court holds that the foregoing testimony, which sought to challenge the genuineness of the first page of each of the two guaranties, was incompetent and that the trial court committed reversible error in admitting it.

As previously stated, by the language of the first page of each guaranty, each of the individual defendants-guarantors assumed liability for the prompt payment, by F & B,

of its obligation to pay for petroleum products delivered to F & B by Interstate.

In *Craig v. Jo B. Gardner, Inc.*, 586 S.W.2d 316 (Mo. banc 1979), the court said, at 324:

"Parol evidence may not be used to vary or contradict terms of an unambiguous and complete written instrument absent fraud, common mistake, accident or erroneous omission.... Parol evidence may not be used to create ambiguity in an otherwise unambiguous contract or to show that an obligation is other than that expressed in the written instrument."

In *Mercantile Trust Co. v. Carp*, 648 S.W.2d 920 (Mo.App.1983), the court said, at 924:

"[A] guaranty is a contract, ... and, absent fraud, accident or mistake, a party is 'held to have had knowledge of a contract which he or she had an opportunity to read but did not by reason of indolence, folly or careless indifference to the ordinary and accessible means of information.'"

In *Southgate Bank & Trust Co. v. Axtell*, 710 S.W.2d 247 (Mo.App.1986), the court said, at 252–253: "The parol evidence rule is a rule of law and not a rule of evidence; evidence offered in violation must be ignored and a decision must be rendered on the writing alone." (Citing authorities.)

Paragraph 4 of Count III pleaded that the four individual defendants "agreed to assume the financial responsibility of (sic) the debts incurred by [F & B] as evidenced by the agreements signed by the defendants, copies of which are attached hereto as [Exhibit 6 and Exhibit 7]."

 In their joint answer, the four individual defendants, in response to paragraph 4 of Count III, pleaded: "4. Denies."[5]

---

**4.** All references to rules are to Missouri Rules of Court, V.A.M.R.

**5.** In paragraph 7 of their answer to Count III, the four individual defendants pleaded: "7. Further answering, defendants Robert Betz, Betty Betz, Gerald Davis Fagan and Linda Fagan state that the personal guaranty on their part, if

any, was subsequently cancelled as a result of a satisfaction and accord reached between the parties."

An "accord and satisfaction" contemplates an agreement between parties to give and accept something different from that claimed by virtue of the original obligation and both the giving and acceptance are essential elements. *Bohle v.*

Rule 55.23 reads, in pertinent part: "When any claim ... is founded upon a written instrument and the same shall be set up at length in the pleading or a copy attached thereto as an exhibit, the execution of such instrument shall be deemed confessed unless the party charged to have executed the same shall specifically deny the execution thereof."

Rule 55.08 lists affirmative defenses which are matters which a party is required to set forth in pleading to a preceding pleading. Among those defenses are "fraud" and "any other matter constituting an avoidance or affirmative defense."

Rule 55.15 reads, in pertinent part: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

The petition pleaded the contents of Exhibit 6 and Exhibit 7 in the manner prescribed by Rule 55.23. Under that rule, the execution of each of the exhibits was deemed confessed "unless the party charged to have executed the same shall specifically deny the execution thereof." Defendants' answer contained no specific denial.

In *Lutsky v. Blue Cross Hosp. Service, Inc.*, 695 S.W.2d 870 (Mo. banc 1985), our Supreme Court said, at 872: "It is the sense of [Rule 55.23] that the answering defendant must clearly state its position if an issue of authenticity of a document attached to the petition is intended to be raised." See also *Federal Deposit Insurance Corp. v. Crismon*, 513 S.W.2d 305, 307[1] (Mo.1974); *Missouri Farmers Ass'n, Inc. v. Todd*, 667 S.W.2d 736, 738[4] (Mo. App.1984); *City of St. Louis ex rel. Esmar v. Tru–Bounce*, 562 S.W.2d 158, 161 (Mo. App.1978) ("To 'specifically deny each and every allegation' of certain numbered paragraphs is a general denial."); *Household Finance Company, Inc. v. Watson*, 522 S.W.2d 111, 113[1] (Mo.App.1975); *Securi-*

*ties Investment Company v. Hicks*, 444 S.W.2d 6, 7–8[1, 2] (Mo.App.1969).

▬▬ The challenged testimony sought to discredit the two guaranties by showing that the first pages of Exhibit 6 and Exhibit 7 were not the first pages of the documents which the four defendants had signed. Whether this paper switching was due to fraud or mistake or some other reason was left to the imagination of the jury.

Defendants' answer did not plead fraud or mistake. Such averments, if made, must state with particularity the circumstances constituting fraud or mistake. That was not done here. There was no compliance with the *Lutsky* requirement that the answer must clearly state the defendant's position if an issue of authenticity of a document attached to the petition is intended to be raised. These deficiencies in the answer clothed Exhibit 6 and Exhibit 7 with the protection of the parol evidence rule because defendants had not pleaded any facts which would remove the case from the operation of the rule.

Defendant's evidence concerning the alleged 50 percent limitation on their respective liabilities was contrary to the language on the first page of each of the guaranties. Execution of each of the guaranties was deemed confessed. The challenged evidence was incompetent. In addition to the foregoing authorities see, generally, 38 Am.Jur.2d Guaranty § 124; 33 A.L.R.2d 960 (parol evidence rule as applied to written guaranty—in particular § 24 collecting cases holding parol evidence was inadmissible to show an agreement limiting the contract of guaranty as to the amount guaranteed.)

Each of the individual defendants-guarantors guaranteed to Interstate the prompt payment of the obligation of F & B, now represented by the judgment in favor of

*Sternfels*, 261 S.W.2d 936, 941 (Mo.1953). An "accord" is an agreement for settlement of some previously existing claim by substituted performance. *Edgewater Health Care, Inc. v. Health Systems Management, Inc.*, 752 S.W.2d 860, 868 (Mo.App.1988). "Satisfaction" is the performance of such agreement. *Id.*

There was no evidence of an accord and satisfaction, and defendants neither sought nor obtained an instruction on that affirmative defense.

Interstate on Count I. Further, each of the guarantors agreed to pay Interstate all of Interstate's "costs and expenses" relating to the enforcement of the guaranty, "including reasonable attorneys' fees." Since defendants offered no evidence supporting a defense to Count III, apart from their unsuccessful defense to Count I, Interstate is entitled to judgment on Count III as a matter of law.

Interstate has asked this court to set aside the judgment on Count III and to enter judgment for Interstate against the individual defendants jointly and severally in the amount awarded on Count I, and for an additional amount representing Interstate's attorneys' fees and expenses in enforcing the guaranties.

This court has concluded that the instant record is insufficient for it to determine a reasonable amount to which Interstate is entitled under the quoted provisions of the guaranties with respect to "costs and expenses, including reasonable attorneys' fees." For that reason, this court has concluded to reverse the judgment on Count III and to remand the cause with respect to Count III only. The sole purpose of the remand is to obtain a determination in the trial court of the amount to which Interstate is entitled for said costs, expenses and attorneys' fees. The trial court, in its discretion, may conduct such additional proceedings which it may deem appropriate in order to ascertain said amount. When that determination has been made in the trial court, the trial court shall enter judgment on Count III in favor of Interstate and against each of the four individual defendants, jointly and severally, for the sum of $43,857.34, plus interest thereon at 9 percent per annum from February 7, 1987, to March 20, 1990. Said judgment shall be entered as of the date of the verdict. Rule 78.04. In addition, and as a separate award under Count III, the trial court shall enter the amount to which Interstate is entitled for its costs, expenses and attorneys' fees.

That portion of the judgment which is based on Count III and Verdict C and Verdict D is hereby reversed and the cause is remanded to the trial court for further proceedings with respect to Count III in accordance with the foregoing instructions. In all other respects the judgment is affirmed. It is so ordered.

PARRISH, P.J., and SHRUM, J., concur.