Robert F. BETZ, Respondent,

v.

Gerald Davis FAGAN and Linda Fagan, Appellants.

No. 21473.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 20, 1998.

CROW, Judge.

This appeal arises from events that occurred before and after this court's mandate in *Interstate Petroleum Distributors, Ltd. v. F & B Investments, Inc., et al.,* 816 S.W.2d 263 (Mo.App. S.D.1991). That case is referred to in the present opinion as "the earlier case." The opinion in the earlier case should be read as a preface to the present opinion.

In compliance with this court's directive in the earlier case, the trial court entered judgment January 29, 1992, in favor of Interstate Petroleum Distributors, Ltd. ("Interstate") against Robert Betz, Betty Betz, Gerald Davis Fagan and Linda Fagan on Count III of Interstate's petition. The judgment awarded Interstate $43,857.34 against Robert,[1] Betty, Gerald and Linda, jointly and severally, with interest at nine percent per annum from February 7, 1987, to March 20, 1990 (said amount being $12,399.07), together with $40,261 for "attorney's fees and expenses."

Robert then paid Interstate $95,000, and Interstate acknowledged satisfaction of the judgment in full.

Robert thereupon commenced the present action by suing Gerald and Linda for their "proportionate share" of the $95,000 Robert paid Interstate. Robert's "Petition for Contribution" prayed for judgment against Gerald and Linda, jointly and severally, in the sum of $47,500.

After the Fagans[2] answered, Robert moved the trial court for summary judgment. The trial court granted the motion, awarding Robert judgment for $47,500 against Gerald and Linda, jointly and severally. The Fagans bring this appeal from that judgment.

As explained in the opinion in the earlier case, Robert and Betty owned fifty percent of F & B Investments, Inc. ("F & B") in 1987; Gerald and Linda owned the other fifty percent. 816 S.W.2d at 266. F & B operated a service station near Neosho. *Id.* at 265.

Charles Buchanan, Joplin, for Appellants.

Ronald E. Mitchell, John Mollenkamp, Blanchard, Robertson, Mitchell & Carter, P.C., Joplin, for Respondent.

---

1. For brevity and clarity, the present opinion refers to the individuals mentioned in it by their respective forenames. No disrespect is intended.

2. The present opinion refers to Gerald and Linda collectively by their surname, and likewise to Robert and Betty collectively by their surname.

The earlier case was a suit by Interstate against F & B because F & B did not pay Interstate for gasoline and diesel fuel delivered by Interstate to F & B. *Id.* In Count III of its petition in the earlier case, Interstate sought judgment against Robert, Betty, Gerald and Linda for the amount owed by F & B. *Id.* Interstate's claim against the Betzes and Fagans was based upon guaranties whereby the quartet assumed responsibility for the debts of F & B. *Id.*

A jury trial in the earlier case produced a judgment in favor of Interstate against F & B, but against Interstate on its Count III against the Betzes and Fagans. *Id.* Interstate appealed to this court.[3] *Id.*

This court reversed the portion of the judgment which exonerated the Betzes and Fagans from liability on Interstate's Count III and remanded the case to the trial court with the directive mentioned in the second paragraph of the present opinion. As explained there, the trial court carried out the directive, entering judgment for Interstate on its Count III (the judgment Robert thereafter satisfied for $95,000).

The first of the Fagans' three points relied on in the present appeal avers the trial court erred in awarding Robert summary judgment against the Fagans in that there was a genuine issue of material fact. That issue, say the Fagans, arose from an agreement signed June 26, 1991 (while the appeals in the earlier case were pending). The agreement was presented to the trial court in the present case as Exhibit B. This opinion henceforth refers to the agreement by that designation.

There were four parties to Exhibit B: Robert, Gerald, F & B, and another corporation formed by the Betzes and Fagans which operated a store in Rogers, Arkansas. This opinion henceforth refers to the latter corporation as "the Rogers corporation."

The preamble of Exhibit B states the parties thereto (Robert, Gerald, F & B, and the Rogers corporation) "have agreed to the amicable settlement of all existing claims they may have to date arising out of the transactions and occurrences involving the investments of [the Rogers corporation.]"

One segment of Exhibit B is paragraph 5, which reads:

"Gerald Davis Fagan, and F & B Investments, Inc., shall indemnify and hold harmless Dr. Robert F. Betz and Betty Betz from any further liability they may owe to F & B Investments, Inc. which might have arisen as a result of the present litigation between F & B Investments, Inc. et al., and Interstate Petroleum Distributors, LTD. However, it is understood by all parties that this indemnification and hold harmless agreement shall not extend to cover or in any manner be construed to protect Dr. Robert F. Betz and Betty Betz from any personal liability Dr. Robert F. Betz and Betty Betz may have to Interstate Petroleum Distributors, LTD."

Although Betty is mentioned in paragraph 5 (above), neither she nor Linda was a party to Exhibit B.

The judgment in the present case addresses Exhibit B, stating:

"[The Fagans] pose as their defense the settlement agreement (Exhibit 'B') entered into between [Robert] and ... Gerald ... on 26 June, 1991, and in particular paragraph 5. It was argued by the counsel for [the Fagans] that the Court could consider evidence of the circumstances surrounding the execution of Exhibit 'B' only if the exhibit is ambiguous. The Court finds that Exhibit 'B' is unambiguous. [Robert] in his action does not seek to be indemnified and held harmless by [the Fagans]. Rather, [Robert] is willing to bear the expense of payment of half the judgment rendered against the parties herein plus Betty Betz, jointly and severally, in favor of Interstate.... [Robert] seeks only contribution, not indemnity. Further, ... Linda ... claims no protection from [Robert's] motion for summary judgment based on Exhibit 'B', to which she was not a party."

---

3.  F & B and Gerald also appealed. *Id.* at 265. Only the disposition of Interstate's appeal is relevant to the present appeal.

The Fagans' first point avers: "The contract language [of paragraph 5, Exhibit B] that the 'indemnification and hold harmless agreement shall not extend to cover ... Robert ... and Betty ... from any personal liability ... [they may have] to Interstate ...' is ambiguous and therefore ... the [trial] court was required to consider extrinsic evidence of the surrounding circumstances of the contract but failed to do so."

Although the Fagans' first point yields no clue as to wherein and why the language quoted by the Fagans from paragraph 5 is ambiguous, we glean from the argument following the point that the Fagans' theory of ambiguity is: (a) the second sentence of paragraph 5 provides that the indemnification obligation imposed on Gerald and F & B by the first sentence of paragraph 5 does not protect Robert and Betty from any personal liability they may have to Interstate; (b) the "dictionary definition" of "indemnification" suggests a meaning similar to reimbursement or contribution; (c) consequently, the second sentence of paragraph 5—giving the term "indemnification" its plain meaning—bars Robert from seeking reimbursement or contribution for the $95,000 he paid Interstate; (d) hence, in order to prevail on his claim in the present case, Robert must argue that the plain meaning of "indemnification" was not intended in the second sentence of paragraph 5; (e) that instead some other, narrower meaning of "indemnification" was intended; and (f) the other meaning is unambiguous.

The Fagans seize upon a passage in Robert's brief stating that indemnity and contribution are not the same, and another passage in Robert's brief stating that indemnity and contribution are often used interchangeably. The Fagans maintain those passages constitute a concession by Robert that there is an ambiguity in paragraph 5, thus the trial court should have received parol evidence to resolve the ambiguity. The Fagans maintain parol evidence would have established that when Exhibit B was signed, Gerald and Robert "discussed the fact that, if Robert Betz or Betty Betz was found personally liable to Interstate Petroleum, they would have no right to be reimbursed for any loss they paid."

Whether language in a contract is ambiguous is a question of law to be decided by the trial court. *Slankard v. Thomas*, 912 S.W.2d 619, 627[11] (Mo.App. S.D.1995); *Maryland Casualty Co. v. Martinez*, 812 S.W.2d 876, 880[5] (Mo.App. W.D.1991). A contract is ambiguous only when it is reasonably susceptible of different constructions. *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264[6] (Mo. banc 1973). A contract is not ambiguous because the parties disagree upon the proper construction of it. *Id.* at [5]. A court will not resort to construction where the intent of the parties is expressed in clear and unambiguous language. *Id.* at [3]. Where there is no ambiguity in a contract, the intention of the parties is to be gathered from the contract alone, and it is the duty of the court to state its clear meaning. *Id.* at [2].

Here, the first sentence of paragraph 5 of Exhibit B imposes a *contractual duty* upon Gerald and F & B to "indemnify and hold [the Betzes] harmless" from "any further liability they may owe" F & B as a result of the earlier case (the suit by Interstate against F & B, the Betzes and the Fagans). That is all the first sentence does. The first sentence imposes no contractual duty upon Gerald or F & B to protect the Betzes from any liability the Betzes may have to Interstate. However, nothing in the first sentence purports to *release* Gerald (or F & B) from any duty the *common law* may impose on them to protect the Betzes from any personal liability the Betzes may have to Interstate. The first sentence pertains exclusively to liability by the Betzes to F & B—not liability by the Betzes to Interstate.

The second sentence of paragraph 5 of Exhibit B confirms that the contractual duty imposed on Gerald and F & B by the first sentence does not require Gerald or F & B to protect the Betzes from any personal liability the Betzes may have to Interstate. However, the second sentence—like the first sentence—does not purport to release Gerald (or F & B) from any duty the common law may impose on them to protect the Betzes from

any liability the Betzes may have to Interstate.

In sum, paragraph 5 of Exhibit B neither (a) imposes a contractual duty on Gerald (or F & B) to indemnify and hold the Betzes harmless from any liability the Betzes may have to Interstate, nor (b) releases Gerald (or F & B) from any duty the common law may impose on them to protect the Betzes from any personal liability the Betzes may have to Interstate.

This court holds paragraph 5 of Exhibit B is clear and unambiguous insofar as it does not bar Robert from seeking contribution from Gerald for a portion of the $95,000 Robert paid Interstate.[4] Consequently, any extrinsic evidence which would have assigned a different meaning to paragraph 5 was barred by the parol evidence rule. *See: Waldorf Investment Co. v. Farris*, 918 S.W.2d 915, 919[4] (Mo.App. S.D.1996); *CIT Group/Sales Financing, Inc. v. Lark*, 906 S.W.2d 865, 868[2] (Mo.App. E.D.1995).

■ Summary judgment is appropriate where a contract is clear and unambiguous. *Slankard*, 912 S.W.2d at 627[12]; *Maryland Casualty Co.*, 812 S.W.2d at 880[7]. Accordingly, the trial court did not err in hearing and determining the present case by summary judgment. The Fagans' first point is denied.

The Fagans' second point reads:

"The court erred in entering a joint and several judgment against Gerald ... and Linda ... for one-half of the judgment because:

A. The underlying judgment that was paid by [Robert] was joint and several against four (4) individuals.

B. If [Robert] had any right to contribution ... it is limited to the proportionate share of each judgment debtor.

C. In this case, the proportionate share depends upon the equities between the parties, which has not been adjudicated. If there is any presumption of equal proportionate shares, then at most one-quar-

ter would be due from Gerald ... and one-quarter due from Linda ...; not one-half jointly and severally against each."

In support of their contention that the share of the $95,000 for which they may be liable to Robert has not been adjudicated, the Fagans rely on cases holding that a judgment against two or more defendants does not determine, as between them, what portion each should pay. While that may be correct in certain circumstances, the Supreme Court of Missouri, in *Hammons v. Ehney*, 924 S.W.2d 843, 853 (Mo. banc 1996), held:

"When two or more persons have bound themselves as coguarantors, each of them, as between themselves, is required to bear a ratable proportion of the amount for which they are liable under the contract of guaranty."

■ Absent proof to the contrary, it is presumed that co-obligors received equal benefit from the obligation and they must contribute equally to its payment. *Lock v. LaFevers*, 648 S.W.2d 640, 641[3] (Mo.App. S.D.1983); *Transwestern Industries, Inc. v. Shue*, 537 S.W.2d 848, 849[1] (Mo.App.1976). If there be any contrary agreement or other equitable reason for an unequal apportionment, the burden of alleging and proving such facts is on the proponent of such facts. *Transwestern Industries, Inc.*, 537 S.W.2d at 849–50[2].

The Fagans maintain they are not liable to Robert for contribution because Exhibit B required Robert to "bear the entire burden of the judgment." This court rejected that hypothesis in denying the Fagans' first point.

■ The Fagans identify nothing else in the record that would rebut the presumption that they must contribute equally to payment of the judgment in favor of Interstate in the earlier case. Accordingly, this court holds Gerald, as one of four co-guarantors, must contribute one-fourth of the amount paid by Robert to satisfy the judgment. Linda, an-

---

4. The Fagans' brief states: "This language [of paragraph 5, Exhibit B] presents the issue of whether the prohibition against 'indemnification' prevents Robert ... from seeking reimbursement from [Gerald]." This court reads that statement as a tacit admission that nothing in Exhibit B bars Robert from seeking reimbursement from Linda.

other of the four co-guarantors, must contribute a like amount.

However, that does not resolve the other contention in the Fagans' second point, i.e., that the trial court erred in awarding Robert a $47,500 judgment against Gerald and Linda, jointly and severally. The Fagans argue that at most, Robert should have been awarded judgment against Gerald for $23,750 and judgment against Linda in the same amount. Citing *Transwestern Industries, Inc.*, 537 S.W.2d 848, the Fagans assert: "[I]f there are four parties to a judgment and one party pays the entire judgment, he can recover one-fourth against each."

In *Estate of Bruce v. Bruce*, 767 S.W.2d 598, 600 (Mo.App. E.D.1989), the court said:

> "Where one of several sureties or guarantors, equally bound, pays a debt, he will be subrogated to the rights of the creditor and may recover a pro rata amount of the sum paid. *See, Phelps v. Scott*, 325 Mo. 711, 30 S.W.2d 71, 75–76 (1930)."

Here, Interstate's judgment on its Count III in the earlier case was against Robert, Betty, Gerald and Linda, jointly and severally. Had Robert not satisfied the judgment, Gerald and Linda would be liable to Interstate, jointly and severally, for the full amount. Therefore, argues Robert, the Fagans should pay him $47,500 (half the sum he paid Interstate to satisfy the judgment).

In *Phelps* (cited in the above-quoted passage from *Estate of Bruce*, 767 S.W.2d at 600), the Supreme Court of Missouri said:

> "While … payment by one of several primarily liable extinguishes the … judgment, it is otherwise when payment is made by one standing in the relation of surety or guarantor. It is generally held that in equity when one standing in such relation pays he is, at least as against the debtor primarily liable, subrogated to all the rights and remedies of the creditor, and this even without a formal assignment of the … judgment, if the intent was not to extinguish same but to keep it alive for the purpose of enforcing the rights of the paying surety. . . .

> We see no good reason why the same equitable rules applied in the protection and enforcement of a surety's right of subrogation as against the principal debtor should not apply in the protection and enforcement of his right to contribution from cosureties."

30 S.W.2d at 75–76.

*Phelps* thereafter cited with approval the following passage from Stearns on Suretyship (3d Ed.) § 249, p. 443:

> "If the judgment of the creditor is against several co-sureties, the surety paying will be subrogated to the rights of the creditor upon the judgment against the co-sureties."

30 S.W.2d at 76.

■ This court concludes from *Phelps* that under Missouri common law, Robert, upon satisfying the judgment in favor of Interstate in the earlier case, was subrogated to Interstate's rights as judgment creditor against Gerald, Linda and Betty. Among the rights awarded Interstate in the judgment was the right to collect it from the judgment debtors jointly and severally. However, because Robert's own proportionate share of liability for the judgment was one-fourth, his claim for contribution against his three fellow co-guarantors was limited to three-fourths of the amount he paid Interstate to satisfy the judgment.

Gerald's proportionate share of liability for Interstate's judgment was one-fourth; so was Linda's. Those shares jointly amount to one-half. That is what Robert sought from the Fagans in the present action.[5]

This court holds that Robert's rights as Interstate's subrogee entitled Robert to judgment against the Fagans, jointly and severally, for their proportionate shares of liability for the Interstate judgment. Gerald's proportionate share and Linda's proportionate share jointly amount to one-half.

---

5. Whether Robert, by reason of his rights as Interstate's subrogee, would have been entitled to judgment against the Fagans, jointly and severally, for three-fourths of the amount Robert paid Interstate to satisfy Interstate's judgment is not an issue in this appeal, hence this court expresses no opinion on that subject.

That is what the trial court awarded. The Fagans' second point is denied.

The Fagans' final point avers the trial court erred in awarding Robert summary judgment in that "there were genuine disputes of relevant facts concerning affirmative defenses of recoupment." The "affirmative defenses" appear in an amended answer filed by the Fagans and are identical to counterclaims filed by them against Robert.[6]

The averments which, according to the Fagans, constitute the recoupment defenses are allegations of acts and omissions by Robert in regard to the Rogers corporation alone. No averment in the Fagans' amended answer pertains to any act or omission by Robert regarding F & B or any aspect of the earlier case. Indeed, in their reply brief, the Fagans candidly admit: "The defense of recoupment arises out of disagreements related to the Rogers Corporation."

In *State v. Weatherby*, 344 Mo. 848, 129 S.W.2d 887, 893[11] (1939), the court explained that a defendant's common law right of recoupment is "a purely defensive matter growing out of the transaction constituting a plaintiff's cause of action, available only to reduce or satisfy a plaintiff's claim, and permitting of no affirmative judgment for defendant." *Accord: Schroeder v. Prince Charles, Inc.*, 427 S.W.2d 414, 419[5] (Mo.1968).

The Fagans maintain that inasmuch as Exhibit B resolved the disagreements regarding the Rogers corporation and also contained paragraph 5 (which pertained to the earlier case), the parties "have chosen to link these transactions in a single agreement." Consequently, argue the Fagans: "Since the parties chose to link the transactions in the same agreement, [we] believe that the transactions should be deemed to arise out of the same transaction and occurrence."

█ The Fagans are wrong. Robert's claim against them in the present case is based on (a) the guaranties of the Betzes and Fagans to Interstate which resulted in Interstate's judgment on its Count III against the

Betzes and Fagans in the earlier case, and (b) Robert's payment of $95,000 to Interstate to satisfy the judgment. None of those events appear in, or are referred to by, the allegations of the Fagans' amended answer in the present case. It is thus manifest that the Fagans' purported "recoupment" defenses did not "[grow] out of the transaction constituting [Robert's] cause of action" against the Fagans. *Weatherby*, 129 S.W.2d at 893[11].

This court has studied *Carlund Corp. v. Crown Center Redevelopment*, 849 S.W.2d 647 (Mo.App. W.D.1993), cited by the Fagans. It does not support them. Although the facts in that case are intricate, it is evident that the recoupment defense asserted there arose from the same transaction on which the adverse party's claim was based.

The Fagans' final point is denied, and the judgment is affirmed.

GARRISON, P.J., and PREWITT, J., concur.

---

6. The judgment from which the Fagans bring the present appeal did not adjudicate the counterclaims. However, pursuant to Rule 74.01(b), Missouri Rules of Civil Procedure (1996), the trial court expressly determined there was no just reason for delay in entering judgment on Robert's petition.