985 S.W.2d 903 (1999)
MISSOURI CONSOLIDATED HEALTH CARE PLAN, Respondent,
v.
BLUECROSS BLUESHIELD OF MISSOURI, et al., Defendants,
Prudential Health Care Plan, Inc., Appellant.
No. WD 56057.
Missouri Court of Appeals, Western District.
January 12, 1999.
As Modified March 2, 1999.
Motion for Rehearing and/or Transfer Denied March 2, 1999.
*904 Keith W. Brunstrom, Jefferson City, MO, Attorney for Respondent.
John Michael Hessel, St. Louis, MO, Attorney for Defendants.
Richard J. Pautler, St. Louis, MO, Attorney for Appellant.
Before ULRICH, P.J., and EDWIN H. SMITH and HOWARD, JJ.
Motion for Rehearing and/or Transfer to Supreme Court Denied March 2, 1999.
EDWIN H. SMITH, Judge.
Prudential Health Care Plan, Inc. (Prudential), appeals the partial summary judgment of the circuit court for the respondent, Missouri Consolidated Health Care Plan (MCHCP), on its claim of anticipatory breach of contract wherein it requested injunctive relief and specific performance. In requesting this relief, MCHCP alleged in its petition that, under the terms of the parties' extended contracts governing calendar year 1997, one obligating Prudential to provide HMO medical services for covered Missouri state employees in the East Region of Missouri and the other obligating it to provide services for the West Region, it had a right to unilaterally extend the contracts for one year to cover the 1998 calendar year, while limiting any rate increase to no more than the annual percentage increase in the medical care component of the consumer price index for all urban consumers for the year ending the previous April (the CPI cap).
Prudential raises two points on appeal. In both points, it claims that the trial court erred in granting partial summary judgment to MCHCP on the issue of the CPI cap's applicability because it was not entitled to judgment as a matter of law in that the clear and unambiguous language of the contracts did not reflect an intent of the parties to apply the CPI cap to extensions of single-year contracts, such as the ones in question in the case at bar. In Point I, it claims that the clear and unambiguous language of the contracts provided that the CPI cap applied only to multiple-year rate guarantee contracts (multiple-year contracts), not extensions of single-year contracts. In Point II, it claims, as an alternative to its claim in Point *905 I, that, at the very least, the contract language in question was ambiguous as to whether the CPI cap applied to extensions of single-year contracts and, therefore, the contracts should be construed against MCHCP as the drafter, defeating MCHCP's motion for summary judgment and requiring summary judgment for it.
We reverse and remand.

Facts
MCHCP is a public corporation created by the State of Missouri and subject to Chapter 103. It provides coverage for medical expenses for state officers, employees, retirees, and their dependents, and for officers, employees, retirees, and their dependents of participating member agencies. It does so by contracting for such coverage through private managed care companies such as Prudential. Prudential is a private Texas corporation authorized to do business in Missouri. It is in the business of providing managed health care services.
In August 1993, Prudential initially contracted with MCHCP to provide HMO medical services for covered insureds in the East and West Regions of Missouri for 1994. This contract, like all future contracts between the parties, was based upon a Request for Proposal (RFP) prepared and issued by MCHCP. Each RFP contained the terms of a proposed contract. Each bidder generally adopted the terms of the RFP in offering to provide coverage for a fixed price in one or more regions of Missouri designated by the MCHCP, although a bidder could negotiate for amendments.
Each of the RFP's, beginning in 1993 and continuing through 1995, contained a provision allowing MCHCP to extend the contract for a single year at a time up to four years, and that, with one exception, "all terms, conditions and provisions of the original contract [were to] remain the same and apply during the extension period." The exception applied to the price to be paid by MCHCP during any extension period. In this respect, the RFP's provided that six months prior to expiration of the initial contract period, the provider would submit proposed prices for the upcoming year, and that any increase over the initial price would be supported by a showing of adverse claims experience. The exception further provided that "[i]n addition, such prices and extension terms shall be subject to negotiation between MCHCP and parties to the contract" and that if the price increases requested by the provider were unacceptable to MCHCP, it could solicit competitive proposals. If the provider did not submit a proposed increase six months prior to expiration, then the initial price would be in effect for the extension period.
The option of MCHCP to extend a contract was found in § 17 of the applicable RFP, which applied to single-year contracts. It stated:
The contract shall not bind, nor purport to bind, MCHCP for any contractual commitment in excess of the original contract period. Missouri Consolidated Health Care Plan shall have the right, at its sole option, to extend the contract for four (4) one-year periods, or a portion thereof. In the event that MCHCP exercises its options, all terms, conditions, and provisions of the original contract shall remain the same and apply during the extension period, with the exception identified in Section 17.1-17.2.
17.1 At least six (6) months prior to the expiration of the contract, the contractor must submit the proposed firm fixed prices that would be applicable for the new contract period if the contract is extended pursuant to this paragraph:
17.1.1 Any request for a price increase must be supported by documentation of adverse claims experience and/or any other such justification. In addition, such prices and extension terms shall be subject to negotiation between MCHCP and parties to the contract.
17.1.2 The contractor shall agree and understand that if price increases requested are determined to be excessive or otherwise unacceptable, MCHCP reserves the right to solicit competitive proposals.
17.1.3 The contractor may request from MCHCP an extension of the six (6) *906 month requirement for submission of new firm fixed prices with documented justification provided such request is submitted at least 6 months prior to expiration of the contract. The decision of MCHCP regarding the extension of time for submitting such prices shall be final and without recourse.
17.2 Unless a request for an extension of the 6 month time requirement is received and written approval is provided by MCHCP, the contractor agrees that if price increase requests are not received by MCHCP at least six (6) months prior to the expiration of the contract, no price increase shall be granted and contract prices shall remain the same for the next full contract period.
The 1993 and the original 1994 RFP's did not make any provision for multiple-year rate guarantee contracts. However, in June of 1994, the RFP was amended to add a new provision to provide for the same. It read as follows:
19. Pricing

a. multiple year rate guarantees will be accepted; and

b. annual rate changes will be negotiated, but any increase will not exceed the adjusted annual percentage change in the medical care component of the consumer price index for all urban consumers for the previous April.
In the 1995 and 1996 RFP's, this provision was repeated as § 5.4. It read as follows:
Multiple year rate guarantees will be accepted. Annual rate changes will be negotiated, but any increase will not exceed the adjusted annual percentage change in the medical care component of the consumer price index for all urban consumers for the previous year ending the previous April.
In addition, the Pricing Page for the 1995 and 1996 RFP's contained similar language in § 3.7 or § 3.8, depending on whether the contract was for the East or West Region. The language was identical and provided:
The contractor shall agree that annual rate changes will be negotiated, but any increase will not exceed the unadjusted annual percentage change in the medical care component of the consumer price index (CPI) for all urban consumers for the year ending the previous April.
Prudential never entered into any multiple-year contracts with MCHCP.
Prudential's 1994 contract with MCHCP for the East and West Regions expired without being extended, as did the contract for 1995. MCHCP's current contracts with Prudential are extensions of the contracts based on the 1995 RFP for the East Region and the 1996 RFP for the West Region, which were extended for 1997. As to 1997 extensions, MCHCP sent a letter to Prudential on July 11, 1996, indicating that renewal rates had not been received by June 30, 1996, as required by part Three, Section 17.1 of the 1996 RFP. As a result, the letter indicated that if the contract was renewed, the contract rates for 1997 would be the same as for 1996 and would not include an increase for the CPI.
As to 1998 extensions, MCHCP sent a letter to Prudential on or about May 29, 1997, informing it that the medical component of the CPI for the year ending April 1997 would be 3.0 percent and reminding it that renewal quotes would be due by June 1997. Prudential submitted a proposed price increase of 30 percent for the 1998 contract extensions. MCHCP extended the contract for the East and West Regions for 1998, but took the position that the CPI cap applied. Prudential subsequently advised MCHCP that it would not honor the 1998 contract extensions with the cap being applied.

Procedural History
In August 1997, MCHCP filed an action in the Circuit Court of Cole County, Missouri, against BlueCross and BlueShield of Missouri. In December 1997, in its first amended petition, MCHCP added Prudential as a defendant, alleging anticipatory breach of contract and requesting injunctive relief and specific performance of contract. It filed a second amended petition on March 13, 1998. In this petition, as to Prudential, MCHCP generally alleged that, contrary to the terms of the parties' contract extension, Prudential was refusing to perform because it objected *907 to the application of the CPI cap of 3 percent.
A preliminary injunction was granted MCHCP on December 31, 1997, by the Honorable Byron Kinder, requiring Prudential to perform under the contract subject to the cap. On March 19, 1998, on cross-motions for summary judgment, the Honorable Thomas J. Brown, III, granted MCHCP partial summary judgment on the issue of whether the CPI cap applied to the parties' contract extensions for 1998. MCHCP and Prudential subsequently entered into a stipulation wherein Prudential agreed to be bound by certain orders the court had entered regarding issues between MCHCP and BlueCross and BlueShield.[1] In the stipulation, Prudential expressed its intent to appeal only from the trial court's determination regarding the applicability of the CPI cap to the 1998 extensions.
On June 10, 1998, based on its previous rulings and the stipulation of the parties, the trial court entered its final judgment finding that the CPI cap language of the parties' contracts was clear and unambiguous, applying the cap to extensions of single-year contracts, as well as multiple-year contracts, and permanently enjoining Prudential from breaching its contracts with MCHCP through the year 2000 as to the East Region and 2001 as to the West Region.
This appeal follows.
Standard of Review
When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.
Our review is essentially de novo. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.
ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993) (citations omitted). Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law. Id. at 377.

Discussion
Initially we address the respondent's claim that the appellant's points relied on fail to comply with Rule 84.04(d) in that Point I does not specify the rule of law the trial court should have applied, and Point II does not specify the evidentiary basis to support the application of the rule of law in question. We agree that neither point technically complies with the strict requirements of the rule. However, "[w]hile not condoning noncompliance with the rules, a court will generally, as a matter of discretion, review on the merits where disposition is not hampered by the rule violations." Brown v. Hamid, 856 S.W.2d 51, 53 (Mo. banc 1993); Podlesak v. Wesley, 849 S.W.2d 728, 731 (Mo.App.1993).
In deciding whether the appellant has sufficiently complied with Rule 84.04(d) to invoke our jurisdiction, we note that the function of the rule is to give notice to the opposing party and to the court of the issues presented for appellate review. Wilkerson v. Prelutsky, 943 S.W.2d 643, 647 (Mo. banc 1997). As such, although we would admonish the appellant's counsel for his failure to technically comply with Rule 84.04(d), because the appellant's points relied on provide sufficient notice to MCHCP and this court as to the issues presented on appeal, we will review on the merits. Id. at 647.

*908 I.
In Point I, Prudential claims that MCHCP was not entitled to summary judgment on the issue of the applicability of the CPI cap to the contracts in question, because the clear and unambiguous language of the contract extensions provided that the CPI cap applied only to multiple-year contracts, not extensions of single-year contracts. For its part, MCHCP agrees with Prudential that the language of the contracts concerning the application of the CPI cap was clear and unambiguous, but takes an opposite view as to how it should be interpreted, contending that the CPI cap applied to extensions of single-year contracts, as well as multiple-year contracts.
To be entitled to summary judgment under Rule 74.04, MCHCP, as the movant, was required to establish that: (1) there was no genuine dispute as to the material facts on which it relied to recover and had the burden of persuasion at trial; and (2) on these undisputed facts, it was entitled to judgment as a matter of law. Rule 74.04; ITT Commercial Finance, 854 S.W.2d at 381. In a contract case, such as the one at bar, summary judgment is appropriate where the language of the contract is clear and unambiguous, Betz v. Fagan, 962 S.W.2d 432, 436 (Mo.App.1998), such that "the meaning of the portion of the contract in issue is so apparent that it may be determined from the four corners of the document." MECO Sys., Inc. v. Dancing Bear Entertainment, Inc., 948 S.W.2d 185, 191 (Mo.App.1997). "A determination as to whether a contract is ambiguous is a question of law to be decided by the court." CB Commercial Real Estate Group, Inc. v. Equity Partnerships Corp., 917 S.W.2d 641, 646 (Mo.App.1996). "When the resolution of [a contract] issue turns on the intentions of the parties, and parol evidence is necessary to show those intentions, a question of fact exists preventing summary judgment." MECO Sys., 948 S.W.2d at 191. Where the language of the contract is found to be ambiguous, requiring parol evidence to determine the intent of the parties, the summary judgment should be reversed and the case remanded for further proceedings. Id. at 191 (citing Cooper v. Anschutz Uranium Corp., 625 S.W.2d 165, 167 (Mo.App.1981); Signature Pool & Court v. City of Manchester, 743 S.W.2d 538, 541 (Mo.App.1987)). In light of the foregoing, to be entitled to summary judgment, MCHCP was required to show that the contract provisions as to the application of the CPI cap, on which it relied for summary judgment, were clear and unambiguous.
To make a prima facie case for summary judgment, MCHCP, as the claimant, was required to show with undisputed facts, by pleadings, discovery, or affidavits, each and every element of its claim for anticipatory breach of contract. Rule 74.04(c)(1); ITT Commercial Finance, 854 S.W.2d at 381. To prove its claim, MCHCP was required to show with undisputed facts that Prudential was a party to the contract in question and had manifested a positive intention to breach it, either by express statements or conduct. Powell v. Bagley, 862 S.W.2d 412, 414 (Mo. App.1993); Keltner v. Sowell, 926 S.W.2d 528, 531 (Mo.App.1996). With this as a given, the proof elements of a claim for anticipatory breach of contract are essentially the same as those for breach of contract, with the only difference being that the breach and damages have yet to occur. Hence, in order for MCHCP to prove its claim of anticipatory breach of contract, in addition to proving an intent to breach, it was necessarily required to first prove, as in a breach of contract case, the elements of: (1) the existence of a valid contract, and (2) the rights and obligations of the respective parties under the contract. Howe v. ALD Servs., Inc., 941 S.W.2d 645, 650 (Mo.App.1997).
In asserting its right to summary judgment, MCHCP relied on the allegation that the clear and unambiguous language of the contracts provided for the application of the CPI cap to extensions of single-year contracts. In this respect, the trial court agreed with MCHCP and found that it made a prima facie case for summary judgment. In order to defeat MCHCP's prima facie case for summary judgment, the burden then shifted to Prudential to show that the clear and unambiguous language of the contracts did not provide for application of the CPI cap to extensions of single-year contracts. Thus, *909 the issue we must decide, in determining whether MCHCP was entitled to summary judgment, is whether the clear and unambiguous language of the contracts provided for the application of the CPI cap to extensions of single-year contracts.
In order to decide the issue presented, we necessarily must interpret the parties' contracts for the East and West Regions of Missouri. In this respect, "[t]he cardinal principle for contract interpretation is to ascertain the intention of the parties and to give effect to that intent." Butler v. Mitchell-Hugeback, Inc., 895 S.W.2d 15, 21 (Mo. banc 1995). In interpreting a contract, we must use the plain, ordinary, and usual meaning of the contract's words and consider the whole document. Preferred Physicians Mut. Management Group, Inc. v. Preferred Physicians Mut. Risk Retention Group, Inc., 961 S.W.2d 100, 103 (Mo.App.1998); Smith v. Taylor-Morley, Inc., 929 S.W.2d 918, 921 (Mo.App.1996). "Where there is no ambiguity in a contract, the intent of the parties is to be determined from the contract alone and the courts will not resort to construction where the intent of the parties is expressed in clear and unambiguous language." Mt. Hawley Ins. Co. v. Azia Contractors, Inc., 886 S.W.2d 640, 642 (Mo.App.1994); Grantham v. Rockhurst Univ., 563 S.W.2d 147, 150 (Mo.App.1978). A disagreement by the parties as to the proper interpretation to be given the contract does not render it ambiguous. Carondelet Health Sys., Inc. v. Royal Gardens Assocs., 943 S.W.2d 669, 673 (Mo. App.1997). An ambiguity in a contract arises only where its terms are susceptible to fair and honest differences, Id. at 673, and "when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract." Preferred Physicians, 961 S.W.2d at 103. A contract is ambiguous when it "promises something in one place and takes it away at another place...." Missouri Property & Cas. Ins. Guar. Ass'n v. Petrolite Corp., 918 S.W.2d 869, 872 (Mo. App.1996).
The effect of two sections of the parties' contracts are essentially in dispute, § 17 and § 3.7 or § 3.8, depending on whether the 1996 contract for the East Region or the 1997 contract for the West Region is being referenced. Section 17, which appeared in all the contracts between the parties, beginning with the contract for the 1994 calendar year, dealt with extensions of single-year contracts. It provided, inter alia, the procedure to be used in determining rate increases for such extensions. In this respect, § 17.1.1 provided that "[a]ny request for a price increase must be supported by documentation of adverse claims experience and/or any other such justification. In addition, such prices and extension terms shall be subject to negotiation between MCHCP and parties to the contract." Section 3.7 first appeared in the 1996 calendar year contract for the East Region and provided that: "The contractor shall agree that annual rate changes will be negotiated, but any increase will not exceed the [CPI cap]." Section 3.8 first appeared in the 1997 contract for the West Region and was identical in language to § 3.7 of the 1996 East Region contract.
In claiming that the clear and unambiguous language of the contracts did not provide for the application of the CPI cap to extensions of single-year contracts, Prudential relies on the language of § 17 which, by its express terms, applied only to extensions of single-year contracts. It provided, inter alia, that any rate increases in connection with the extension of a single-year contract were to be subject to negotiation between the parties but not the CPI cap limiting any rate increases. Prudential points to the absence of cap language in § 17 as expressing an intent that a rate increase as to an extension of a single-year contract was not limited by the cap.
While MCHCP agrees with Prudential that § 17 governed extensions of single-year contracts; provided a procedure of negotiation to be used in determining rate increases for those extensions; and did not include cap language, it contends that Prudential's argument impermissibly ignores the language of § 3.7 or § 3.8. In this respect, MCHCP correctly contends that § 17 cannot be read in isolation, but must be read in light of the entire contract, specifically the CPI cap language found in § 3.7 or § 3.8. Taylor-Morley, 929 S.W.2d at 921. MCHCP points to *910 the fact that while the CPI cap language in § 3.7 or § 3.8 does not specifically refer to extensions of single-year contracts, it does state that "annual rate changes will be negotiated, but any increase will not exceed the [CPI cap]," (emphasis added), which, it contends, expresses an intent of the parties to apply the CPI cap to rate increases as to the extension of a single-year contract. The upshot of this interpretation, according to MCHCP, is that rate increases in connection with extensions of single-year contracts would still be subject to the negotiation procedure set forth in § 17, but any negotiated increase would be limited by the CPI cap found in § 3.7 or § 3.8. The trial court agreed with this argument of MCHCP in finding for it on the issue of the applicability of the CPI cap.
In response to MCHCP's argument that the CPI cap language in § 3.7 or § 3.8 should be interpreted as applying to extensions of single-year contracts, Prudential makes two arguments. In its first argument, Prudential points to the fact that MCHCP included the CPI cap language in § 5.4, the counterpart to § 17 governing multiple-year contracts, but did not include it in § 17, governing extensions of single-year contracts. Prudential argues from this fact that the parties intended for the CPI cap to apply to multiple-year contracts, but not extensions of single-year contracts. Otherwise, it argues, there is no other plausible explanation for why the CPI cap language was included in § 5.4, but not in § 17. For its second argument, Prudential focuses on the fact that the CPI cap language in § 3.7 or § 3.8 refers only to "annual rate changes," which is the same terminology used in § 5.4, the multiple-year contract provision, while § 17 employed the words "firm fixed prices" to refer to rate increases in connection with extensions of single-year contracts. Prudential argues that the use in § 5.4 of the identical language found in § 3.7 or § 3.8, but employing different language in § 17, expressed a clear intent of the parties to apply the CPI cap to multiple-year contracts, but not extensions of single-year contracts. In response to these arguments of Prudential, MCHCP contends that if the CPI cap language in § 3.7 or § 3.8 were to be interpreted as applying only to multiple-year contracts, then its inclusion in the Pricing Page in § 3.7 or § 3.8 of the contract would be rendered meaningless because § 5.4 of the contract already included a CPI cap provision applicable to multiple-year contracts.
Giving the contract terms their plain and ordinary meaning and considering the arguments of the parties, we find that both Prudential and MCHCP present plausible, reasonable interpretations to be given the CPI cap language in the contracts. This language could either be interpreted as applying the cap to extensions of single-year contracts, as well as multiple-year contracts, or only to the latter. We are unable, with any certainty, to determine the intent of the parties as to whether the cap was to apply to extensions of single-year contracts, as well as multiple-year contracts. In light of this fact, as to the issue of the cap's applicability, we find that the contract is ambiguous. Taylor-Morley, 929 S.W.2d at 922. Accordingly, we find that the trial court erred in granting summary judgment to MCHCP. Betz, 962 S.W.2d at 436.

II.
In Point II, Prudential claims that, if we cannot determine from the four corners of the contracts whether the cap applied to extensions of single-year contracts, or in other words, it was ambiguous as to this issue, it was entitled to summary judgment because an ambiguous contract is to be construed against its drafter, in this case MCHCP. Jacobs v. Georgiou, 922 S.W.2d 765, 771 (Mo.App.1996). While we agree with this general principle of law, the canon of construction to which Prudential refers is applicable only if and when an ambiguity is found and the parties' intent cannot be determined otherwise from parol evidence. And, despite this construction, as noted in our discussion in Point I, supra, once an ambiguity is found as to a contract issue on which the moving party relies for summary judgment, the case is not ripe for summary judgment, unless the intent of the parties is otherwise clear on the facts not in dispute, requiring no further evidence. Betz, 962 S.W.2d at 436; MECO Sys., 948 S.W.2d at *911 191. Such is not the case here. Consequently, although Prudential can certainly assert the contract construction argued here as a basis for judgment in its favor in a trial on the merits, it cannot rely on it as a basis for summary judgment in its favor where parol evidence is necessarily required to establish the intent of the parties as to the applicability of the CPI cap to extensions of single-year contracts.
Point denied.

Conclusion
The judgment of the circuit court for MCHCP, requiring Prudential to perform under the parties' contract extensions through the year 2000 as to the East Region of Missouri and 2001 as to the West Region subject to the CPI cap, is reversed, and the cause is remanded for further proceedings consistent with this opinion.
All concur.
NOTES
[1] MCHCP and BlueCross and BlueShield litigated issues concerning the admission of public entities into MCHCP, alleged violations of Missouri's Sunshine Act, and alleged breaches arising as a result of MCHCP terminating its relationships with other carriers.