**FLUOR ENTERPRISES, INC., f/n/a Fluor Daniel, Inc., Plaintiff,**

v.

**SOLUTIA INC., Defendant.**

**No. CIV. A. G–01–074.**

United States District Court,
S.D. Texas,
Galveston Division.

May 18, 2001.

D. Gibson Walton, Vinson & Elkins, Houston, TX, Richard Lee Melancon, Melancon and Hogue, Anthony G. Buzbee, Melancon & Hogue, Friendswood, TX, for Fluor Enterprises Inc.

William M. Coats, Coats Rose Yale Holm Ryman and Lee, Houston, TX, Douglas W. Poole, McLeod Alexander et al., Galveston, TX, for Solutia, Inc.

## *ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT*

KENT, District Judge.

This commercial contract dispute arises out a construction project at Defendant Solutia Inc.'s ("Solutia") Chocolate Bayou facility in Alvin, Texas. Now before the Court is Defendant Solutia's Motion for Summary Judgment and Plaintiff Fluor Enterprises, Inc.'s ("Fluor") Cross Motion for Partial Summary Judgment. For the reasons set forth below, Defendant's Motion for Summary Judgment is **DENIED**, while Plaintiff's Motion for Partial Summary Judgment is **GRANTED**.

### I. RELEVANT FACTS

Plaintiff and Defendant entered into a contract ("Agreement") for "Engineering, Procurement and Construction" work to be performed by Plaintiff at Defendant's Chocolate Bayou Plant in Alvin, Texas. This contract includes Section 36, "Dispute Resolution." Section 36 sets forth several steps that the parties are required to take in the hope of amicably resolving any disputes arising out of or relating to the Agreement.

The Agreement mandates, first, a detailed process by which a dispute will pro-

ceed upward through the management hierarchy of each company in an effort to resolve the matter in a process less adversarial than litigation.[1] Following unsuccessful negotiating attempts, the Agreement next contemplates formal mediation. Thus, the parties shall "attempt in good faith to resolve the controversy or claim in accordance with the Center for Public Resources Model Procedure for Mediation of Business Disputes." However, "[i]f the matter has not been resolved pursuant to the aforesaid mediation procedure within thirty (30) days of the commencement of such procedure ... either party may initiate litigation."

The parties disagree about what actions commence the "procedure" that sets this thirty (30) day clock in motion. Defendant Solutia argues that the "procedure" is the actual sit-down with the mediator, which took place on February 7 and 8, 2001. By contrast, Plaintiff Fluor contends that the "procedure" commenced before the parties met constructively with the mediator, arguing that the "procedure" began when the parties chose a mediator, on November 2, 2000. Accordingly, the issue now before the Court concerns when a party may initiate litigation relative to the mediation time table.

## II. DISCUSSION

### A. *Summary Judgment Standard*

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P.

56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.,* 799 F.Supp. 691, 693 (S.D.Tex. 1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those por-

---

1. The contract states that "if a controversy or claim should arise," the project managers for each party would "meet at least once." Either party's project manager could request that this meeting take place within fourteen (14) days. If a problem could not be resolved at the project manager level "within twenty (20) days of [the project managers'] first meet-

ing ... the project managers shall refer the matter to senior executives." The executives must then meet within fourteen (14) days of the referral to attempt to settle the dispute. The executives thereafter have thirty (30) days to resolve the dispute before the next resolution effort may begin.

tions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2553; *see also* Fed. R.Civ.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *See Matsushita*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir.1995). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *See Matsushita*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56. However, to meet its burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 586–87, 106 S.Ct. at 1355–56 (quoting Fed.R.Civ.P. 56(e)).

### B. *Applicable Law*

■ The parties seem to disagree about what body of law applies to this action. Their Agreement states that Missouri law shall apply. However, Plaintiff points the Court to a Texas statute purportedly making this choice of law provision voidable by Plaintiff. *See* Tex. Bus. & Comm.Code Ann. § 35.52 (Vernon Supp.2001) ("If a contract is principally for the construction or repair of improvements to real property located in this state ... [a provision choosing another state's law] is voidable by the party obligated by the contract to perform the construction or repair."). Plaintiff claims to have exercised this right. At present, however, the Court need not resolve whether Plaintiff has indeed voided the choice of law provision, because Defendant concedes that Missouri and Texas law are not in conflict on the issue before the Court. Under both Missouri and Texas law, when a writing is so worded that it can be given certain or definite legal

meaning, the document is unambiguous and should be construed by the Court as a matter of law. *See Leggett v. Missouri State Life Ins. Co.*, 342 S.W.2d 833, 876–77 (Mo.1960); *Missouri Consol. Health Care Plan v. Bluecross Blueshield of Missouri*, 985 S.W.2d 903, 909 (Mo.Ct.App.1999); *Acetylene Gas Co. v. Oliver*, 939 S.W.2d 404, 409 (Mo.Ct.App.1996); *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996); *Lenape Res. Corp. v. Tennessee Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex.1996).

### C. *What is the Mediation "Procedure"?*

■ The parties concur that their Agreement contains a "standstill" provision that prohibits either party from commencing litigation until thirty days have elapsed from the "commencement of ... [the mediation] procedure." According to Defendant, this "standstill" provision is a condition precedent to each party's right to litigate a claim arising out of or relating to the agreement. Assuming, for the moment, that this provision constitutes an enforceable condition precedent, the issue becomes when the mediation "procedure" was commenced in this case.

Defendant contends that the "procedure" does not include preliminary acts such as selecting a mediator or paying a mediation fee. Defendant urges that the mediation "procedure" is not commenced until the parties actually begin substantive discussions with the mediator. This actual mediation session took place on February 7 and 8, 2001. Thus, under Defendant's interpretation, Plaintiff could not file suit until thirty days after February 7 at the earliest.

Plaintiff argues otherwise. According to Plaintiff, the mediation "procedure" encompasses any one of several acts leading up the formal sit-down mediation session.

First, Plaintiff points out that the parties selected a mediator on November 2, 2000. Also, Plaintiff refers to its execution of the Mediation Agreement on December 20, 2000. Plaintiff further directs the Court to its payment of the mediation fee on January 3, 2001. If any of these actions constitute a commencement of the mediation "procedure," Plaintiff contends that its lawsuit filed on February 8, 2001 was timely and proper.

In the absence of guidance from the express language of the contract, the Court would be inclined to agree that a mediation procedure is not commenced until the actual substantive discussions begin. In this case, that would be February, 7, 2001. However, the Court is not faced with such a situation. Instead, the contract provides that the parties will attempt to resolve the controversy "in accordance with the Center for Public Resources Model Procedure for Mediation of Business Disputes." If the "aforesaid mediation procedure" does not bear fruit within thirty (30) days, however, either party may file suit.

The clear language of the contract indicates that the "aforesaid mediation˚procedure" is the procedure set forth by the Center for Public Resources ("Center" or "CPR")—the "CPR Mediation Procedure," which the parties' contract incorporates by reference. The CPR Mediation Procedure includes "Selecting the Mediator." Thus, it would appear that under the CPR Mediation Procedure, the November 2, 2000 act of selecting a mediator constituted a commenced of the mediation procedure. Moreover, the CPR Model Agreement for Parties and Mediator, attached by Defendant as part of the CPR Mediation Procedure expressly distinguishes the mediation "procedure" from the mediation "proceeding." The "proceeding" involves the substantive work of the mediator, while the "procedure" encompasses the more prosaic steps taken toward the actual mediated settlement discussions.

Defendant asks the Court to read the word "procedure" in the agreement to mean the substantive "proceeding" as set forth by the Center.[2] The Court declines to do so. If the parties wanted the thirty-day "standstill" to start when the substantive mediation proceeding began, or ended, they should have said so. *See Willis Corroon Corp. of Utah, Inc. v. United Capitol Ins. Co.,* 1998 WL 30069, *2 (N.D.Cal. Jan.5, 1998) (dismissing a lawsuit because of a provision requiring a thirty-day "standstill" after the completion of mediation).

In sum, the Court determines that "procedure" encompasses all matters set forth in the Center for Public Resources Mediation Procedure. Accordingly, the mediation procedure was commenced on November 2, 2000.

### D.   *Solutia's Other Arguments*

Defendant Solutia also argues that Plaintiff failed to comply with three other alleged conditions precedent to filing suit. First, according to Defendant, Plaintiff filed this suit without giving written notice

---

**2.** Defendant urges that the reading adopted by the Court would render the mediation requirement a nullity because mediation could never be accomplished—a result inconsistent with the Section 36's purpose of encouraging settlement without litigation. Defendant overstates this concern. Admittedly, the Court's reading does give less force to the mediation requirement, but the "standstill" provision is not eviscerated by the Court's holding. And if in some cases a dispute simply cannot be mediated within thirty days of choosing a mediator, it does not seem inconsistent with the Agreement to allow a party to then proceed with a lawsuit. The parties will have already engaged in substantial settlement efforts, and must have made a good faith effort to attain a mediation.

of its withdrawal from mediation as required by the mediation rules. Second, Plaintiff filed suit without having secured a written notice of the mediator's withdrawal, and third without having discussed other dispute resolution alternatives. Defendant contends, that under the terms of the Agreement, compliance with these elements of the CPR Mediation Procedure was a condition precedent to filing suit.

The Court disagrees with Defendant's position. In making each of these arguments, the point Defendant misses is that Plaintiff could have permissibly filed suit while continuing to pursue mediation. Essentially, under the terms of the Agreement's thirty-day "standstill" provision, Plaintiff had a right to file suit even before sitting down for discussions with the mediator. The Court will not now penalize Plaintiff for having chosen to proceed with mediation.

Defendant's arguments also fall short in other respects. First, the Procedure states that a party "may withdraw ... by written notice." However, the Procedure does not mandate that a withdrawal be presented at all—hence the choice of the word "may." Thus, although the Procedure might mandate that a withdrawal be in writing to be effective as a termination of the mediation, this would merely make an oral "withdrawal" ineffective as such. But, as stated, this is of no moment, because Plaintiff was not required to withdraw, or in any manner terminate the mediation, prior to initiating litigation. Second, and similarly, the Procedure does not require a mediator to withdraw in writing. Instead the Procedure merely states that a mediator "may withdraw at any time by written notice." There is nothing in the document to suggest that the Plaintiff must have affirmatively secured the mediator's written withdrawal. Finally, the Procedure states that a mediator "will discuss" the possibility of arbitration. Again, however, there is no support for the argument that Plaintiff must have demanded such a discussion.

## III.  CONCLUSION

For the reasons set forth above, the Court agrees with Plaintiff's reading of the parties' unambiguous Agreement. Therefore, Defendant's Motion for Summary Judgment based upon the alleged failure of a condition precedent to filing this lawsuit is **DENIED.** Plaintiff's Partial Motion for Summary Judgment regarding the meaning of the same portions of the Agreement is correspondingly **GRANTED.** Accordingly, Defendant's condition precedent defense is **DISMISSED WITH PREJUDICE.**

Having said all this, the Court notes its perception that this entire exercise has been a venue fight in disguise—there being a parallel lawsuit filed in the United States District Court for the Eastern District of Missouri. Both parties should be aware that this Court has no interest in participating in a race to judgment with a co-equal federal court and will proceed cautiously to avoid taking any action in derogation of the Missouri court's authority.

**IT IS SO ORDERED.**