**BOARD OF EDUCATION of the CITY OF ST. LOUIS, et al., Respondents,**

v.

**STATE of Missouri, et al., Appellants.**

**No. ED 83503.**

Missouri Court of Appeals,
Eastern District,
Division Three.

March 30, 2004.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 13, 2004.

Jeremiah W. (Jay) Nixon, Atty. Gen., Paul R. Maguffee, John Mollenkamp, Jefferson City, MO, Paul C. Wilson, Deputy Chief of Staff for Litigation, for appellant.

Kenneth C. Broston, Dirk Deyong, Lashly & Baer, Mark J. Bremer, Jennifer S. Forsythe, Kohn, Shands, Elbert, Gianoulakis, St. Louis, MO, for respondent.

Before CLIFFORD H. AHRENS, P.J., WILLIAM H. CRANDALL JR., J., and LAWRENCE E. MOONEY, J.

PER CURIAM.

The State of Missouri and the Missouri State Board of Education (herein collectively referred to as "the State") appeal the trial court's grant of summary judgment in favor of the Board of Education of the City of St. Louis, Missouri ("the school board") and the Voluntary Interdistrict Choice Corporation ("VICC")[1]. The State claims that the trial court erred in granting summary judgment because the school board's petition for declaratory judgment and injunctive relief failed to state a claim for relief. Additionally, the State claims that the trial court improperly granted summary judgment in favor of the school board and VICC because there were genuine issues of material fact. We reverse and remand.

In 1999, various parties to litigation involving the desegregation of St. Louis City public schools entered into a settlement agreement. This agreement was intended to resolve the litigation that had been pending before the United States District Court for some time. Specifically, the agreement contained certain provisions regarding funding for City schools. The school board and VICC claim that the agreement contained financial guarantees in their favor which required the State to provide them with funding calculated by the foundation formula set forth in Senate Bill 781 ("SB 781"), regardless of any potential future changes to the formula. The foundation formula is set forth in section 163.031 RSMo (Cum.Supp.2002)[2], and it is used to allocate state funding to all the school districts in the state using certain factors to calculate the amount provided to each district. Additionally, the school board and VICC allege that the agreement guaranteed the school board's funding would be calculated using a proration factor of no less than 1.0. The proration factor is one element of the foundation formula, and it represents the ratio of total appropriations for state aid for education divided by the amount of state aid which would be required under the foundation formula. Section 163.031.1. It is used essentially to distribute funding appropriated by the legislature among the school districts in a proportional manner according to the foundation formula. And finally, the school board contends that the agreement required the state to apply a proration factor on lines 14(a) and (b) of the foundation formula, dealing with add-ons for free and reduced lunch eligible pupils, of no less than the highest factor applied to either line 1(a) or 1(b), which deal with state aid based on the number of eligible pupils.

The agreement also provided for funding to implement the Voluntary Interdistrict Transfer Program, which allowed African–American City residents to attend schools in certain districts in St. Louis County, and white county students residing in St. Louis County to attend school in the St. Louis City public schools. This program was to be operated by the VICC.

In January 2003, the school board and VICC filed a three-count petition for declaratory judgment and injunctive relief against the State. The petition claimed that the State had breached the settle-

---

1. The school board and VICC filed a joint brief, and therefore, the arguments made by both parties set forth therein are at times collectively referred to in this opinion as claims by "the school board."

2. All further statutory references are to RSMo (Cum.Supp.2002).

ment agreement by failing to meet the three alleged financial guarantees established by the agreement discussed above. The school board also requested attorney's fees and costs. The school board and VICC subsequently filed a motion for summary judgment. The trial court granted summary judgment in favor of the school board and VICC on all three counts of the petition. The court denied the school board's request for attorney's fees and costs. The State filed a motion to supplement the record in order to add the affidavits of Charles Hatfield, counsel to the Attorney General of Missouri, and John Mollenkamp, Assistant Attorney General. The State also filed a motion for new trial or to vacate the judgment of the court. The trial court allowed the State to supplement the record with the affidavits of Hatfield and Mollenkamp; however, the motion for new trial or to vacate the judgment was denied. The State now appeals.

At the request of the court, the parties filed supplemental briefs on the issue of whether the plaintiffs in the underlying desegregation action and the United States of America (herein collectively referred to as "plaintiffs") are necessary and indispensable parties pursuant to Missouri Supreme Court Rule 52.04.

Rule 52.04(a), requires a person be joined in an action if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Pursuant to Rule 52.04(a)(1), we must first determine whether complete relief can be accorded among the school board, VICC and the State, who are already parties to the action, absent the presence of the plaintiffs. The settlement agreement specifically provides that any disputes between the State and the school board shall be adjudicated in state court. However, there is a separate provision stating that, "[i]n the event of a dispute between the State of Missouri or State and City Board defendants and the plaintiffs (including the United States) the plaintiffs may seek to compel specific performance of the terms of this agreement in federal court...." This language, which was approved by the federal court, appears to contemplate an action in state court between only the school board and State, excluding plaintiffs as parties to the suit. The school board and VICC can pursue a declaration of their interests under the settlement agreement without the plaintiffs' participation. Additionally, the state can defend such allegations and pursue its own declaration of interests absent plaintiffs. Therefore, complete relief can be provided to the current parties absent the presence of plaintiffs in the suit.

A person must also be joined pursuant to Rule 52.04(1)(2)(i) if the disposition of the action in his or her absence may impair or impede his or her ability to protect his or her interest in the subject matter of the suit. A party who claims an interest in the subject matter of the action, and is in a position in which the disposition of the action in the party's absence may impair the party's ability to protect his interests will be considered a necessary party. *Missouri Nat. Educ. Ass'n v. Missouri State Bd. of Educ.*, 34 S.W.3d 266, 277 (Mo.App.2000). In the present case, plaintiffs have an interest by virtue of certain guarantees made to them in the

settlement agreement regarding quality of education. There are specific guarantees made to plaintiffs by the school board that require the school board to implement plans for improvement in the schools. The present case seeks declaration of certain rights and obligations with respect to the amount of funding the state is to provide the school board and VICC under the settlement agreement. Plaintiffs have an interest in the funding provisions of the settlement agreement to the extent that the quality of education promised is related to such funding.

■ Assuming without deciding that plaintiffs' interest in the funding guarantees at issue here is direct, pursuant to Rule 52.04(a)(2)(i), we must next decide whether the ability of the plaintiffs to protect their interests under the agreement would be impeded or impaired by their absence from the action at issue. As discussed above, plaintiffs' claim of interest relates specifically to guarantees made to them as to the quality of education that will be provided. The language in the settlement agreement noted above grants plaintiffs the right to seek specific performance of the agreement in federal court against the State and the school board. As a result of the provision in the agreement, the guarantees made to plaintiffs and any alleged breach thereof can be pursued in federal court, regardless of the disposition of the action in the present case. Therefore, the ability of the plaintiffs to protect their interests will not be impaired by their absence from the present case.

Additionally, we must consider whether the absence of plaintiffs as parties to this action will subject the parties already involved to a "substantial risk" of multiple or inconsistent obligations. Rule 52.04(a)(2)(ii). While there may be some argument that the possibility exists for inconsistent results to occur if plaintiffs are not joined, there is no argument by any party that they will be subjected to inconsistent obligations. In fact, the school board, VICC, and the State all vigorously assert that no inconsistent obligations will result from the absence of plaintiffs as parties. As a result, we believe under the circumstances of this case, which is sui generis, there is no "substantial risk" that inconsistent obligations will result from the absence of plaintiffs as parties to this suit. Thus, plaintiffs are not necessary parties required to be joined in the action pursuant to Rule 52.04.

Initially, the State argues that the school board's petition fails to state a claim upon which relief can be granted. The State claims that because the school board did not give the required notice before filing suit, as provided in the settlement agreement, the petition does not state a cause of action. Additionally, the State argues that the only waiver of its sovereign immunity is contained in conditions set forth in the settlement agreement itself, and the school board must fulfill those conditions before it can overcome the jurisdictional barrier of sovereign immunity.

■ The doctrine of sovereign immunity precludes suit against the government without its consent. *State ex rel. Div. of Motor Carrier and R.R. Safety v. Russell*, 91 S.W.3d 612, 615 (Mo. banc 2002). This right has long been recognized in Missouri. *Beatty v. Metropolitan St. Louis Sewer Dist.*, 914 S.W.2d 791, 796 (Mo. banc 1995).

In the present case, the State consented to be sued under the terms of the settlement agreement.[3] Pursuant to the agree-

---

**3.** Section 527.020 RSMo (2000) provides that any person interested under a written con-

tract, or other writing constituting a contract may have issues of construction or validity

ment, any party alleging breach of the settlement agreement was required to provide notice to the Attorney General of the breach. If the alleged breach was committed by an action of the General Assembly, the Attorney General was required to forward notice of the alleged breach to the Speaker of the Missouri House and the President Pro Tem of the Missouri Senate. Furthermore, the agreement stated that:

> "No party shall file any pleading with a court until the General Assembly has had sufficient opportunity to repeal or otherwise remedy any action complained of. Sufficient opportunity as used in this section means at least one calendar year from the date the Attorney General transfers notice to the General Assembly, provided that no interruption of funding takes place or is imminent."

In the present case, notice was provided to the Attorney General by a letter dated June 25, 2002, which specifically detailed the alleged violations by the State that are at issue now. VICC joined in this statement by letter as well. The petition was filed January 22, 2003. There is nothing in the record to indicate whether the Attorney General transferred this notice to the General Assembly as required by the agreement. However, the one calendar year requirement contained in the settlement agreement could not have been met even if the Attorney General had transferred notice to the General Assembly the same date as the letter because the petition was filed only seven months later.

■ Thus, we must consider whether the notice provision contained in the settlement agreement actually applies in this particular case. The school board argues that there was an "interruption" of funding. Pursuant to the settlement agreement, notice of one calendar year

was required prior to filing any pleading, "provided that no interruption of funding takes place or is imminent." The State responds by claiming that the word "interruption" should be interpreted as meaning a cessation of funding to the school board; however, we disagree. Viewing the notice provisions in light of the particular circumstances of this case and the circumstances under which the settlement agreement was entered into, we do not believe the intention of the parties in their use of the term "interruption" was to mean a complete termination of funding to the school board and VICC. Where it is alleged that funding is reduced in such a way as to seriously jeopardize the operation of the district, it could reasonably be construed as an "interruption" in funding.

In his affidavit, attached to the motion for summary judgment, Bruce Ellerman, the Chief Executive Officer of VICC, stated that the alleged guarantees contained in the settlement agreement were "critical" to the City school district. Ellerman noted that because the school districts, through VICC, would become responsible for costs of transportation for transferring students, recruitment, and other administrative costs, which were previously borne by the State pursuant to court orders during the desegregation litigation, the need for the alleged guarantees was "further magnified." According to Ellerman's affidavit, the school board and VICC were attempting to avoid the "worst case" scenario whereby students involved in the transfer program would be forced to return to their district of residence.

These summary judgment facts support a conclusion that the alleged breach of the financial guarantees the school board claims are contained in the settlement

determined, and therefore, jurisdiction is con-

ferred by statute.

agreement could result in an "interruption" of funding, if the reduction caused by the alleged breaches would effectively result in the termination of certain programs by the school board and VICC. As a result the one calendar year requirement does not apply under the particular circumstances of the present case, and therefore, lack of such notice was not a bar to the underlying suit.

The State also contends that the school board and VICC's motion for summary judgment was defective because it failed to negate the affirmative defense of accord and satisfaction asserted in the State's answer. Because we find that summary judgment was otherwise improper for the reasons discussed below, we need not decide this issue.

In its brief, the State argues that summary judgment was improper because the financial guarantees the school board claims have been breached by the State are not contained in the unambiguous language of the settlement agreement.

Our review of a trial court's grant of summary judgment is *de novo*. *Mobley v. Baker,* 72 S.W.3d 251, 256 (Mo.App.2002); (citing *ITT Commercial Fin. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993)). We view the record in a light most favorable to the party against whom summary judgment was entered. *Id.* The non-moving party is also afforded the benefit of all reasonable inferences contained in the record. *Id.* Because the trial court's judgment is based upon the record before it and the law, we do not need to defer to the trial court's decision. *Id.* "To be entitled to summary judgment under Rule 74.04, the movant must establish that (1) there is no genuine dispute as to the material facts on which he relies for summary judgment, and that (2) based on these undisputed facts, he is entitled to judgment as a matter of law." *Id.*

 The interpretation of a settlement agreement will be governed by the same principles applicable to any other contractual agreement. *Baker–Smith Sheet Metal v. Building Erection Services Co.,* 49 S.W.3d 712, 715 (Mo.App.2001). Summary judgment will be appropriate in a contract case where the language of the agreement is so clear and unambiguous that the meaning of the portion in dispute is so apparent that it may be ascertained from the four corners of the document. *Missouri Consol. Health Care Plan v. BlueCross BlueShield of Missouri,* 985 S.W.2d 903, 908 (Mo.App.1999); (*quoting MECO Sys., Inc. v. Dancing Bear Entertainment, Inc.,* 948 S.W.2d 185, 191 (Mo.App.1997)). Whether a contract is ambiguous is a question of law. *Baker–Smith Sheet Metal,* 49 S.W.3d at 716. "An ambiguity arises when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract." *Id.* Ambiguity will not arise from mere disagreements as to construction of the contract. *Id.* However, if the agreement is ambiguous, and the parties' intent must be determined using parol or extrinsic evidence, a question of fact arises as to the intent of the parties. *Missouri Consol. Health Care Plan,* 985 S.W.2d at 908.

In its three-count petition, the school board and VICC claim the State breached three of the financial guarantees contained in the settlement agreement at issue in the present case. The trial court granted summary judgment in favor of the school board and VICC on all three counts.

The school board and VICC's first count alleged that the State had breached a guarantee in the settlement agreement that the State would provide the City schools funding, using the formula set forth in SB 781, regardless of any future changes to SB 781. The school board

relies upon the use of the term "SB 781" in the agreement, particularly in section 22A, and other sections throughout the agreement, in support of its claim that this guarantee was unambiguously contained in the settlement agreement. School board claims that section 22A of the agreement sets out two "specific financial obligations": "(1) Funding to SLPS [St. Louis Public Schools] under SB781; [and] (2) Funding to the New Entity [VICC] or Participating Districts under SB781 as guaranteed in this Agreement." The school board argues that the State breached the contract by amending the definition of "Guaranteed Tax Base" to the detriment of the school board's funding. The State claims that the trial court erred in granting summary judgment on this count because the language of the settlement agreement does not unambiguously guarantee that funding will be provided based on SB 781 regardless of any changes to it.

In 2002, the General Assembly passed House Bill 1711 ("HB 1711"). HB 1711 amended the definition of "Guaranteed Tax Base" as it had previously been set forth in SB 781. Section 163.011(12). The General Assembly revised the definition of GTB to be based on the assessed valuation and student enrollment from the average of the third and fourth preceding years, where under SB 781, GTB was based only on the third preceding year.

The language contained in section 11.4 of the settlement agreement appears to contemplate such a change. Section 11.4 specifically states that:

"In making the calculations regarding the State's contractual guarantees in paragraphs 11.2 and 11.3, any statutory or administrative changes (for example, to the State Foundation Formula or any other source of State funding for schools or the definition of any factors used therein) having disproportionate adverse financial impact upon the . . . [school board] shall be disregarded."

It is a reasonable inference from the wording of section 11.4 that statutory or administrative changes to the foundation formula, sources of funding, or the definition of factors, which do not have a "disproportionate adverse financial impact" are permitted under the settlement agreement.

The change at issue in Count I was to the definition of Guaranteed Tax Base ("GTB"), one of the factors considered in the foundation formula. The school board's contention that the settlement agreement provides a guarantee that SB 781 is the permanent articulation of the formula to calculate funding with respect to the school board appears to be contradicted by a reasonable inference that could be drawn from the language of section 11.4. The parties may have anticipated such potential statutory or administrative changes that may affect the calculation of funding to the school board. It is difficult to reconcile the language in section 11.4 with the use of the term "SB 781" as the permanent articulation of the foundation formula and its components.

The school board claims that the specific financial obligations contained in section 22A do not conflict with section 11.4. According to the school board, section 11.4 is applied only to prevent a disproportionate adverse financial impact upon the St. Louis City schools resulting from an *increase* in funding for all school districts. The State asserts that in section 11.4, the parties recognized that State funding could change over time through "statutory or administrative" changes, and the school board and VICC would be subject to such changes, as would other school districts, unless a disproportionate adverse financial impact resulted.

Where two provisions in a contract are conflicting, the agreement is then subject to two interpretations, and therefore the agreement is ambiguous. *A & L Holding Co. v. Southern Pacific Bank*, 34 S.W.3d 415, 418 (Mo.App.2000). As previously noted, where an agreement is ambiguous, and extrinsic evidence is necessary to determine the intent of the parties, a question of fact arises. *Missouri Consol. Health Care Plan*, 985 S.W.2d at 908. Because the use of the term "SB 781" and the provisions of section 11.4 are conflicting, the agreement is ambiguous, and a question of fact exists as to the intent of the parties, which must be determined using parol or extrinsic evidence. In the present case, the summary judgment facts do not resolve this question of fact as to the intent of the parties. Thus, the trial court erred in granting summary judgment in favor of the school board with respect to the first count of the school board and VICC's petition.

The school board and VICC's second count alleged that the State agreed to apply a proration factor of no less than 1.0 in calculating funding. The school board points to the use of the term "fully fund" in the settlement agreement in support of its argument that the agreement unambiguously makes such a guarantee. The school board and VICC claim the State violated this obligation by applying a proration factor of less than 1.0 to the calculation of the foundation formula for the fiscal years 2002 and 2003. The State claims that the trial court erred in granting summary judgment on this count because the language of the agreement does not unambiguously state that a proration factor of 1.0 is guaranteed.

The State contends that extrinsic evidence exists to support its position that SB781 is subject to change and refutes the school board's assertion that SB781 is the permanent articulation of the foundation formula. Specifically, the State points to the affidavit of Charles Hatfield, the lead negotiator of the settlement agreement on behalf of the State, to show the intent of the parties concerning future funding and the intent of the parties in including section 11.4 in the agreement. This is evidence outside the four corners of the document, or extrinsic evidence, which presents a question of fact precluding summary judgment. *Missouri Consol. Health Care Plan*, 985 S.W.2d at 908.

The school board specifically refers to the language "full funding of SB781" contained in sections 11.2 and 11.3 of the settlement agreement, in support of its argument that the State agreed to guarantee the school board and VICC a proration factor of 1.0 or more in calculating its funding. The State contends these references define specific amounts, or "floors," for State aid to the school board and VICC. The State claims these provisions were intended to establish the basic level of State payments to replace the payments previously ordered by the federal court. The State asserts that the amount of state aid provided to the school board and VICC has exceeded these floors, and therefore, the State has complied with the agreement. Moreover, the State contends that even to the extent it is obligated to pay "full funding" under SB781, the foundation formula has never been a guarantee of particular amounts to any school district. The State further notes that SB781, upon which the school board relies, specifically provides for the possibility of proration.

The school board contends that the use of this language unambiguously guarantees that a proration factor of 1.0 will be used in calculating the amount of funds to be allocated to the City. We disagree. Without the benefit of extrinsic evidence to define "full funding," the settlement agree-

ment's terms are ambiguous. In section 11.2, which contains the State's funding guarantees to the school board, the language describes how "full funding of SB 781" will be provided. It does not mention the proration factor of 1.0 in any portion of the section. It merely outlines the specific per pupil amounts to be applied to the particular lines of the calculation of the foundation formula. Section 11.3, which addresses the State's funding guarantees to VICC, again references "full funding of SB 781" in the context of these per pupil guarantees. Neither section expressly states that "full funding" refers to a proration factor of 1.0. The language in section 11.2 states that "full funding of SB 781 will in fact be provided in the future as follows," and proceeds to list the specific amounts of per pupil funds to be applied in calculating the school board's funding. This per pupil consideration is again set forth in the discussion of "full funding" in section 11.3.

The school board also points to the fact that in the two years immediately following the settlement agreement, the State calculated the school board's funding using a proration factor of 1.0, while using a lesser factor for other school districts in the State. The school board claims that the State's conduct should be construed against them with respect to the interpretation of the settlement agreement. In making this assertion, the school board relies in part upon *Landau v. Laughren,* 357 S.W.2d 74 (Mo.1962). In *Landau,* the Missouri Supreme Court stated that the conduct of the parties is given great weight when attempting to construe a contract provision in dispute. *Id.* at 80. The Court stated that, "[w]here a party by his performance construes the contract in a manner that is against his interest, his actions are generally considered conclusive against him." *Id.* However, the Supreme Court was discussing the consideration of

the conduct of the party in resolving an ambiguity in a contract in the context of a judgment entered in an action for accounting, not summary judgment.

 As discussed above, a question of fact exists when the contract is ambiguous, and the intent of the parties must be determined from parol or extrinsic evidence. *Missouri Consol. Health Care Plan,* 985 S.W.2d at 908. Because the term "full funding" is ambiguous as used in the settlement agreement, a question of fact arises as to the intent of the parties. The extrinsic evidence that was provided by the parties in the motion for summary judgment and the response thereto does not resolve this question of fact. Thus, the trial court erred in granting summary judgment in favor of the school board.

 The school board and VICC's third and final count alleged that the settlement agreement required that the State apply a proration factor no less than the highest factor applied on lines 1(a) or (b) of the foundation formula to lines 14(a) and 14(b). The school board claims the State violated this guarantee by applying a proration factor on line 14(b) that was less than the highest factor used on lines 1(a) or (b). The State claims that the trial court erred in granting summary judgment on this count because the plain language of the settlement agreement does not require such calculation.

As previously noted, the foundation formula, as set forth in section 163.031, is used to calculate state funding to all the districts in the state using certain district-specific factors. In lines 1(a) and (b) of the calculation, the number of eligible pupils in the district is multiplied by certain factors, as well as by the proration factor times the GTB per eligible pupil. Then lines 1(a) and (b) are added together to determine the "District Entitlement". Sec-

tion 163.031.6 Lines 14(a) and (b) multiply the number of free and reduced lunch students by certain factors as well, which are then multiplied by the proration factor, and lines 14(a) and (b) are then added together. The foundation formula next subtracts certain statutory "Deductions" and then adds certain "Categorical Add-ons," which include lines 14(a) and (b).

The relevant portion of the settlement agreement provides that "at no time will any proration factor affecting Line 14(a) or (b) be less than the highest proration factor applied to Lines 1(a) or (b) of the State Foundation Formula."

The school board alleges that this provision guarantees that the highest proration factor applied to lines 1(a) and (b) will be applied to both lines 14(a) and (b), and this guarantee was not met. The affidavit of Gerri Ogle, the Associate Commissioner of Administrative and Financial Service of the Department of Elementary and Secondary Education, stated that the proration factor applied to lines 1(a) and 14(a) was .99963492, and to lines 1(b) and 14(b) was .94963492. The proration factor applied to line 14(b) was less than that applied to line 1(a).

The State argues that a "common sense" reading of the language of the settlement agreement does not support the school board's claim. Specifically, the State claims a "functional commonality" of the 1(a) and 14(a) lines and the 1(b) and 14(b) lines. The State pointed out in oral argument before this Court that the (a) lines provide matching funding up to the district's minimum required levy of $2.75 and the (b) lines provide funding at levels above the minimum levy of $2.75.

The settlement agreement uses terms, particularly the use of "foundation formula" as a basis for calculating funding, which incorporate the terms of section 163.031.

Therefore, we look to the foundation formula for clarification.

Section 163.031 sets forth the calculation used to arrive at the amounts under lines 1(a) and (b) and 14(a) and (b). Pursuant to this statute, the 1(a) and 14(a) lines are based on the first $2.75 of a school district's operating levy. Lines 1(b) and 14(b) are based on the remainder of the district's operating levy in excess of $2.75 (but not more than $4.95), which in the terms of the statute, are calculated using a variable based on the greater of either zero or the operating levy for the district minus $2.75 per $100.00 of assessed valuation. However, the (a) lines for lines 1 and 14 utilize other variables to arrive at the amounts.

When the settlement agreement is construed in conjunction with the calculations set forth in section 163.031, the agreement requires a comparison of the proration factors applied to lines 1(a) and 14(a) and to 1(b) and 14(b), as the State contends. Therefore, the trial court erred in granting summary judgment in favor of the school board and VICC on count three of the petition.

Because the trial court erred in granting summary judgment in favor of the school board on all counts of the petition, we do not need to address the school board's cross-appeal regarding its claim for attorneys' fees, and any claim for attorneys' fees or expenses in regard to this appeal is premature.

The judgment of the trial court is reversed and remanded to the trial court for a determination of the factual issues in this case, and for further proceedings consistent with this opinion.